**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

JOHN DOE,                                          :
                                                   :
               Plaintiff,                    :     Civil Action No. 1:13-cv-00992-KBJ
                                                   :
     v.                                           :
                                                   :
UNITED STATES DEPARTMENT                            :
OF JUSTICE,                                         :
950 Pennsylvania Avenue, NW                         :
Washington, D.C. 20530,                             :
                                                   :
        and                              :
                                                   :
HON. ERIC H. HOLDER, JR.,                           :
United States Attorney General                      :
950 Pennsylvania Avenue, NW                         :
Washington, D.C. 20530,                             :
                                                   :
        and                              :
                                                   :
U.S. MERIT SYSTEMS PROTECTION                       :
BOARD,                                             :
1615 M Street, NW                                  :
Washington, D.C. 20419,                            :
                                                   :
Serve:  Hon. Eric H. Holder, Jr.                   :
        950 Pennsylvania Avenue, NW           :
        Washington, D.C. 20530               :
                                                   :
Serve:  Ronald C. Machen, Jr.                      :
        United States Attorney for the       :
        District of Columbia                 :
        555 Fourth Street, NW                :
        Washington, D.C. 20530               :
                                                   :
Serve:  Deborah Miron,                             :
        Chief Administrative Judge            :
        Merit Systems Protection Board       :
        1615 M Street, NW                    :
        Washington, D.C. 20419               :
                                                   :
            Defendants.                 :

## COMPLAINT

This is a "mixed case" Complaint seeking relief and damages against Defendant Department of Justice ("DOJ") for an improper employment removal action in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 and an appeal of subsequent constitutional errors by Defendant Merit Systems Protection Board ("MSPB") upon administrative review in violation of 5 C.F.R. §§ 1201.56(b) and § 1201.115(d)(2).

## JURISDICTION AND VENUE

1.    This Court has appellate jurisdiction over mixed-case complaints involving agency actions appealable to the Merit Systems Protection Board which include unresolved claims under the Rehabilitation Act of 1973, 29 U.S.C § 794, pursuant to 5 U.S.C. § 7702(a)(1)(B)(iii).  *See Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012).

2.    Venue is proper in this District under 28 U.S.C. § 1391 because the Defendant agencies reside in the District of Columbia and a substantial portion of the events giving rise to this case occurred in this District.

## PARTIES

3.    Plaintiff John Doe was previously employed by Defendant DOJ as an Assistant United States Attorney ("AUSA"), and is a citizen and resident of a state of the United States.

4.    Defendant DOJ is an executive agency of the United States Government within the meaning of the Privacy Act. DOJ is being sued on account of the acts of other AUSAs and employees as set forth in this Complaint.

5.    Defendant Eric Holder is the Attorney General of the United States and head of the United States Department of Justice.

6.      Defendant MSPB is an independent, quasi-judicial agency in the Executive branch established by Congress by the Civil Service Reform Act of 1978 (CSRA).  MSPB carries out its statutory responsibilities and authorities primarily by adjudicating individual employee appeals and by conducting merit systems studies.

## FACTS

7.      John Doe is a veteran federal prosecutor, having received numerous awards and recognition for outstanding performance, including the highest award of the United States Attorney General. At the time of the events alleged in this Complaint, John Doe served as an Assistant United States Attorney for a federal district within the United States.

8.      John Doe began to run afoul of the leadership in the United States Attorney's Office ("USAO") in that district in 2003. The United States Attorney at that time was a political appointee of the Bush Administration. The precipitating event occurred in May of that year, when John Doe refused to authorize an illegal search and seizure proposed by a law enforcement agent who was a supporter and protégé of the U. S. Attorney. The agent proposed this search in an investigation known as the Money Exchange case.

9.      Despite the objection by John Doe, the illegal search and seizure was approved by John Doe's superiors, including the U.S. Attorney. Therefore, John Doe prepared a memorandum to disclose the proposed illegal search and seizure.

10.     John Doe provided the memorandum to his superiors and to other law enforcement agents working on the investigation. As a consequence of John Doe's disclosure, the illegal search did not occur. This memorandum is a protected disclosure under the Whistleblower Protection Act, 5 U.S.C. § 1221.

11.     John Doe was then told by the U.S. Attorney to collect all copies of the memorandum and destroy them. The U.S. Attorney then told John Doe to "re-write" the memorandum. John Doe refused. He was then removed from the case.

12.     His superiors then increased their pressure on John Doe to conform to their political goals. In the summer of 2003, the USAO suggested that John Doe's conflicts with their leadership must be the product of a psychological condition. John Doe met with a psychologist identified by the USAO, who found no need for any treatment or assessment, viewing the matter as a leadership problem.

13.     As his superiors persisted, John Doe felt increasing stress in 2003. Late that year, John Doe experienced an emotional crisis which he reported to the USAO. John Doe then took an authorized medical leave of absence while under the care of his psychologist, who diagnosed an anxiety disorder. John Doe returned to work in early 2004.

14.     The USAO then escalated its retaliatory acts against John Doe, including disciplining him for conduct which occurred during his emotional crisis.

15.     John Doe made additional disclosures regarding his supervisors' misconduct from 2005 through 2008 which are protected under the Whistleblower Protection Act. These additional protected disclosures included reports of misconduct by his superiors in disciplinary proceedings, in political hirings, and in mishandling of a terrorist investigation.

16.     On October 24, 2005, John Doe made a request to the USAO that accommodations be made by management to account for his job-related anxiety disorder. On June 13, 2006, management provided him with Form 100A, the DOJ Reasonable Accommodation request. On October 9, 2006, John Doe submitted the Form 100A along with a letter from his psychologist.

4

17.     On November 30, 2006, John Doe engaged in an interactive process with the Acting United States Attorney and the director of the administrative office to discuss an appropriate accommodation. On December 13, 2006, the director partially granted the reasonable accommodation request. The USAO agreed to increase the level of communication between John Doe and his superiors.

18.     The USAO complied with this promise until the summer of 2008. At that time, the USAO's knowledge of the proposed illegal search and seizure of May of 2003 in the Money Exchange case became a seminal event in a pending criminal case in that district. The law enforcement agent who proposed the illegal search and seizure was the target of new trial motions filed by defendants convicted in his cases. These defendants alleged that the USAO knew of acts of misconduct by the law enforcement agent which should have been disclosed before trial. The misconduct included instances of lying under oath, paying informants to set up innocent persons, beating suspects, and tampering with tape recordings. The federal court ordered the USAO to produce all documents related to the credibility of the law enforcement officer, including those related to the proposed illegal search and seizure.

19.     Also during this time period, John Doe received information from an AUSA in another district related to fundraising for the 9/11 Terrorists. Based on this information, John Doe sought to re-open the Money Exchange case. John Doe believed that the USAO in his district had evidence that persons involved in the Money Exchange case raised money for the 9/11 Terrorists. On March 26, 2008, the Acting United States Attorney directed John Doe to prepare a detailed memorandum regarding his review.

20.     On the same date, John Doe met with his direct supervisor to discuss the 9/11 Terrorist fund raising. During that discussion, the supervisor again criticized John Doe for

preparing the memorandum on the proposed illegal search in 2003 related to the Money Exchange case.

21.     John Doe continued to work with investigators on the connection between the Money Exchange case and the 9/11 Terrorists. Their review of the evidence suggested that Mohamed Atta was in the United States before 2000, and in John Doe's district. On April 28, 2008, John Doe met again with his direct supervisor to discuss the Money Exchange case. During this meeting, John Doe updated his supervisor on the investigation. They also discussed whether revelation of this evidence after so many years would expose the USAO to criticism.

22.     On May 3, 2008, John Doe and two case agents continued their work on the Money Exchange case. The three were convinced that they had evidence of terrorist fund raising, including money provided to a group listed as a Foreign Terrorist Organization, prior to September 11, 2001. On May 5, 2008, John Doe provided his Money Exchange Memorandum to the Acting United States Attorney and his own supervisors. He also provided the Memorandum to the AUSA in another district, to the case agents in his own district, to the DOJ Terrorism Unit Coordinator, and to three other attorneys in DOJ familiar with the Money Exchange case.

23.     The Acting United States Attorney concluded that the Memorandum should be sent to the DOJ Counter Terrorism Section. On May 15, 2008, Deputy Attorney General Mark Filip issued a new DOJ Guideline on national security information. Mr. Filip directed DOJ attorneys to promptly make disclosures of national security information to all law enforcement components that need the information. On May 19, 2008, John Doe provided additional information to the recipients of his Money Exchange Memorandum.

24.     On May 22, 2008, John Doe met with his direct supervisor who questioned the process of the creation of the Money Exchange Memorandum. During the meeting, the

supervisor criticized John Doe for distributing the Money Exchange Memorandum to DOJ attorneys and law enforcement personnel outside the USAO. The supervisor once again criticized John Doe for distribution of the illegal search memorandum in 2003, asserting that John Doe "did not learn his lesson five years ago." John Doe reminded his supervisor that law enforcement agents and DOJ attorneys are compelled to disclose information related to national security.

25.      On May 23, 2008, John Doe urged the Acting United States Attorney to act upon the Money Exchange Memorandum because bank records underlying the terrorist funding would be destroyed after 7 years. On May 27, 2008, the United State Attorney ordered John Doe to retrieve the May 5 Money Exchange Memorandum from all recipients. The Acting United States Attorney then criticized John Doe for "going outside the chain of command." The Acting United States Attorney ordered John Doe to turn over the Money Exchange case materials to another AUSA. That AUSA never followed up on the Money Exchange Memorandum.

26.      On June 3, 2008, at his quarterly file review with supervisors, John Doe again was asked to discuss the Money Exchange case and its connection to 9/11 fund raising. He explained that as a coincidence of his having worked several investigations in his district as well as working on the Zacarias Moussaoui investigation, the 9/11 fund raising evidence became clear. John Doe pointed out that even though the 9/11 Commission concluded that the terrorist funding likely came from domestic donors, no one had brought a viable 9/11 fund raising prosecution.

27.      On June 6, 2008, John Doe provided a memorandum to USAO management reminding them of his anxiety disorder and that the Office had granted him a reasonable accommodation.

28.     On June 17, 2008, John Doe learned that an agent with the DOJ Counter Terrorism Section was appalled that the Money Exchange – 9/11 Terrorism evidence was never shared.

29.     On July 10, 2008, John Doe produced his 2003 memorandum to Special Prosecutors pursuant to the federal court's order in the new trial motions, through the Civil Division Chief for the USAO.

30.     On July 16, 2008, USAO management interviewed John Doe for a position on the elite Strike Force. During the interview, John Doe was asked whether he was convinced that the Money Exchange case was connected to 9/11 Terrorism, to which he responded, "absolutely."

31.     On August 4, 2008, fully aware that John Doe was likely to be a witness for the defense in the new trial motions, management advised John Doe that he would be transferred to the Gun Unit, a significant demotion. His superiors again criticized him for preparing the illegal search memorandum in 2003. His superiors also told John Doe that he was being transferred for his "health" and that they would only be "enabling" him by leaving him in the elite unit of the USAO where he had served admirably. Management also indicated that John Doe would be supervised by an AUSA about whom John Doe had made a Whistleblower complaint. Management further intended to move his office next door to another AUSA who was also the subject of the Whistleblower complaint.

32.     On August 6, 2008, John Doe met with his direct supervisor to discuss the proposed demotion. The supervisor criticized John Doe for disseminating the Money Exchange Memorandum outside the office, stating that the USAO was embarrassed and had to "answer questions from Washington." The supervisor defended the rogue agent who was the subject of

the new trial motions, and again criticized John Doe for producing the June 2003 memorandum regarding the illegal search. On August 7, 2008, John Doe's demotion was announced in an office-wide email.

33.     On the recommendation of his DOJ-approved psychologist, on August 11, 2008, John Doe submitted a new reasonable accommodation request to the USAO, pursuant to the Rehabilitation Act, asking not to be transferred or to move his office. There were no performance reasons for such a transfer. His psychologist's request noted that demoting John Doe would exacerbate John Doe's anxiety disorder. His superiors were ordering him to work with persons who were the subject of his prior disclosures protected under the Whistleblower Protection Act.

34.     On August 15, 2008, USAO management disclosed to law enforcement personnel with whom John Doe worked that he was being demoted "for his health."

35.     On the same date, pursuant to the Rehabilitation Act, the USAO requested further medical documentation to support the reasonable accommodation request.

36.     On September 5, 2008, pursuant to the Rehabilitation Act, John Doe submitted the requested medical documentation to the appropriate employee within the administrative office of the USAO, including letters from his psychologist and physician.

37.     Unbeknownst to John Doe, without his permission, and in violation of the United States Attorney's Procedures USAP 3-5.101.001 (6)("USAP"), the director of the administrative office of the USAO then re-disclosed this medical information to the Acting United States Attorney and to AUSAs in the office with no right or need to know, who then re-disclosed this medical information to persons in the Executive Office for United States Attorneys [EOUSA] and then to persons in the Personnel Security Section of that office. The EOUSA provides legal counsel to the United States Attorney's Offices around the country. Its attorneys had represented

the USAO in various pending disciplinary matters against John Doe, and its attorneys were adverse to John Doe in those matters.

38.     Attorneys for EOUSA have admitted in another judicial proceeding that the protected medical records were shared with them and with the Personnel Security Office at DOJ. Attorneys for EOUSA also have asserted in the other judicial proceeding that these disclosures were for the purpose of evaluating John Doe's reasonable accommodation request.

39.     Instead of engaging in the information process established by the USAP and required by Sections 501, 504 and 508 of the Rehabilitation Act, and making reasonable accommodations through an interactive process to accommodate John Doe's anxieties and fears of working with persons who were the subject of his prior disclosures, his superiors used the medical and psychological information as a pretext to dismissing John Doe. His superiors failed to act on his request for reasonable accommodation, foreclosing his ability to appeal such a decision administratively, in violation of the USAP's requirement that agency officials respond promptly to such requests, with a final disposition made within seven business days of receipt of the request or medical documentation, in cases where medical documentation is required.

40.     While purporting to use the medical information provided by John Doe to assess his reasonable accommodation request, DOJ peremptorily revoked his eligibility for a security clearance. No interactive process was utilized to express to John Doe – then represented by counsel – the security concerns surrounding his reasonable accommodation request. Nor did DOJ consult its own medical experts. This is so because DOJ – acting through its employees in EOUSA and the USAO of John Doe's district –  believed it was then in possession of a "Silver Bullet:" a reason to revoke his security clearance which would make any claim under the

41.     Rehabilitation Act request unreviewable under the Supreme Court case of *Dep't of Navy v. Egan*, 484 U.S. 518 (1988).

42.     The architect of this strategy was an attorney with the EOUSA who had litigated employment issues against John Doe for several years. This attorney had developed an irrational animosity towards John Doe, refusing to indulge settlement discussions with John Doe's attorney because John Doe was "litigious." John Doe contends that after a reasonable opportunity for further discovery, there will be evidentiary support for an assertion that this attorney has never before been involved in the reasonable accommodation process on behalf of DOJ or in any reasonable accommodation process implicating security clearance issues.

43.     When John Doe arrived at work on September 11, 2008, less than a week after he submitted his medical documentation under the Rehabilitation Act, he was met at his office by U.S. Marshals and members of the USAO. An AUSA told John Doe that the EOUSA had revoked John Doe's eligibility for a security clearance based on the medical information he had submitted under the Rehabilitation Act seeking a reasonable accommodation.

44.     John Doe was escorted out of and away from the building by U.S. Marshals in view of the public and a member of the press. Rumors that John Doe had been "fired" flew through the legal community.

45.     Not only did the USAO re-disclose the medical information provided by John Doe under the Rehabilitation Act to the EOUSA, but three of its AUSAs held a telephone conference with persons in the Personnel Security Section on September 9, 2008, during which those AUSAs provided additional medical information related to John Doe that is protected from disclosure under the Privacy Act and the Rehabilitation Act. Based on this medical information, the Personnel Security Division of the EOUSA concluded that John Doe was no longer eligible

to hold a Special-Sensitive, Level 4 position and that it was the EOUSA officer's lay opinion that his continued assignment as an AUSA "poses an unnecessary and unacceptable operational security risk to the Department."

46.     On October 10, 2008, the Acting United States Attorney for the USAO proposed in a letter that John Doe be fired based on the medical information that he had provided under the Rehabilitation Act. The Acting United States Attorney re-disclosed the medical information again to the Executive Director of the EOUSA to act as the Deciding Official in the removal action.

47.     On January 15, 2009, the Executive Director for the EOUSA issued what he purported to be a final decision removing John Doe from his appointed position of Assistant United States Attorney. The removal was based on the medical information previously provided by John Doe under the Rehabilitation Act. The removal was effective on the date of the action, even though DOJ regulations provide that only the Attorney General may remove an Assistant United States Attorney for security reasons.

48.     Defendant DOJ's employees did not conduct any medical review, did not consult any medical personnel, and did not follow its own regulations regarding assessment of John Doe's ability to maintain a security status or determine another reasonable accommodation that would overcome his job-related limitations. Defendant DOJ's employees also ignored the clinical opinion of John Doe's own treating psychologist.

49.     On February 11, 2009, John Doe appealed his removal to the United States Merit Systems Protection Board. Because he was required to include with his appeal the proposal for removal and the final decision, John Doe asked the MSPB to place his case under seal and allow him to proceed using a pseudonym. This request was made pursuant to the Privacy Act and the

Rehabilitation Act. DOJ was represented before the MSPB by the same attorney who had litigated against John Doe in various disciplinary matters back to 2004, and who also represented DOJ in connection with the removal process. DOJ opposed sealing and the use of a pseudonym, even though the governing DOJ regulations would permit DOJ to agree to protect Privacy Act information. Attorneys for DOJ falsely reported to the MSPB Administrative Judge that DOJ regulations prohibited them from consenting to any sealing order or use of a pseudonym. The MSPB Administrative Judge denied the requests.

50.     On March 26, 2009, John Doe sought to exhaust his administrative remedies with the MSPB by filing a request to certify the sealing/pseudonym decision to the full Board. The MSPB Administrative Judge denied the motion. The Privacy Act-protected personnel records and medical records of John Doe now are in the public record of the MSPB. In addition, in his Order on Motion to Stay Proceedings, the MSPB Administrative Judge included Privacy Act protected information in the decision which bears John Doe's name. This decision is also publicly available.

51.     In motions pending in the district of John Doe's prior employment, defendants sought a retrial in the case related to the misconduct of the rogue DEA agent (as described in Paragraph 8 above) and identified John Doe as a witness. Several of Defendant DOJ's AUSAs in the district of John Doe's prior employment were attempting to conceal their knowledge of the law enforcement agent's prior misconduct which was the subject of the new trial motions. These employees were instrumental in John Doe's dismissal.  There has been significant press coverage of this scandal.  John Doe was subpoenaed by the defendants and testified before the federal district court judge overseeing the new trial motions.  The federal court found that the USAO had committed *Brady* violations; however, the court found that reversal was not a proper remedy.

Dozens of persons were released from jail as a result of the DEA agents misconduct, and the United States paid undisclosed amounts to settle civil lawsuits.

52.      These actions were a concerted effort by the USAO through certain of its employees to intimidate and coerce John Doe and to humiliate and embarrass him in the eyes of the public in an effort to destroy his credibility as a witness in the new trial motions. These actions were also in retaliation for numerous instances of whistle blowing by John Doe.

53.      John Doe also sought unemployment compensation from the State of his residence. The USAO, acting on behalf of DOJ, re-disclosed John Doe's medical and personnel records to a third-party contractor known as TALX. TALX, acting as agent for the USAO, appealed the award of unemployment compensation. In the appeal, TALX submitted to the unemployment commission on behalf of DOJ copies of the Proposal for Removal and the Final Decision of Removal. Contained in both these documents were the medical records of John Doe as well as personnel records of John Doe's prior disciplinary record with the USAO. These protected materials now are in the public record.

54.      Beginning on August 25, 2009, the MSPB conducted an administrative hearing before the Honorable Stephen E. Manrose, Administrative Judge, on John Doe's appeal of his removal.  John Doe alleged that his removal was pretextual and that his removal was the product of discrimination and retaliation under the Rehabilitation Act and reprisal for protected whistleblower activity.

55.      At the MSPB administrative hearing, counsel for EOUSA stated that "[i]f [the Department of Justice] made the security determination with respect to [appellant] by flipping a coin, by pinning the tail on the donkey or doing any other thing, under *Egan* and the Board law, you have no right to look behind it….You only have a right to look at the procedures afforded

him." This was an articulation of the "Silver Bullet" strategy that EOUSA and the USAO had implemented against John Doe.

56.     At the hearing, the EOUSA attorneys ridiculed testimony from both John Doe's primary family physician and his treating psychologist. It was the medical opinion of these doctors, used by Doe to pursue reasonable accommodation, which was distorted and improperly used by DOJ as the basis for his security determination and removal.

57.     On October 27, 2009, following the administrative hearing, the MSPB Administrative Judge made his initial decision regarding John Doe's appeal, upholding the agency's removal decision on the basis that the agency had presented "strong, if not irrefutable" evidence for his removal based on security grounds, and accordingly determining that it need not consider the particulars of John Doe's allegations of retaliatory discrimination.

58.     John Doe petitioned the full MSPB for review of the initial decision on December 15, 2009, citing constitutional error warranting a reversal of the agency decision.

59.     In its opinion of August 9, 2012, the full MSPB Board agreed that John Doe had been denied established procedures by DOJ for review of the decision to revoke his eligibility for a security clearance. More specifically, the MSPB declared that John Doe had a right to review by the Access Review Committee ("ARC") following EOUSA's determination to withdraw his eligibility for access to classified information, and remanded the matter to DOJ to apply its internal procedures, including review by ARC, for reviewing a decision to withdraw an employee's eligibility for access to classified information under 28 C.F.R. part 17. The Board's opinion also stated that it could not decide a claim of discrimination in an appeal based on suspension or revocation of access to classified material because it may not do so under *Egan*.

60.     In fulfilling the MSPB remand order, John Doe and the EOUSA made presentations to the ARC on November 8, 2012.  On January 23, 2013, the ARC issued an initial decision finding that there was insufficient evidence to support the EOUSA and USAO's revocation of John Doe's eligibility for a security clearance.  However, rather than simply overturning the revocation and reinstating John Doe, DOJ, through the ARC,directed that Doe submit to independent psychological and psychiatric examinations by experts selected by the Federal Bureau of Investigation ("FBI").  There are no existing procedures under which DOJ or the ARC could compel John Doe to submit to these examinations.  John Doe was no longer a DOJ employee, and DOJ and EOUSA did not obtain such an examination when John Doe was an employee and rejected John Doe's offer of submitting to an independent examination in 2008.

61.     Although no longer an employee of DOJ, John Doe voluntarily submitted to medical tests and examination on May 23 and May 24, 2013, by a psychologist and a psychiatrist selected by the FBI and experts in national and workplace security.  Both concluded that there was no obstacle to Doe's eligibility for a security clearance, that Doe was not a danger to himself or to others, that no basis existed under the Adjudicative Guidelines to deny Doe a clearance, and that Doe should be given a reasonable accommodation in the workplace.  These results were communicated to the EOUSA for comment on July 17, 2013.

62.     In response to the favorable results of these ARC mandated medical examinations, DOJ responded by writing a letter to ARC on September 9, 2013, requesting that it uphold the revocation of John Doe's security clearance.  Despite the MSPB's explicit remand order that ARC review occur, DOJ requested that ARC focus solely on the evidence and events available to the deciding official in 2008.  It further challenged the validity of the medical tests

mandated by ARC by foolishly suggesting that Doe could alter his behavior in a manner sufficient to deceive the medical examiners.

63.     To date, John Doe has not been reinstated to his former employment at DOJ, nor have his discrimination claims been adjudicated by MSPB or any other body.

## COUNT I – Violation of the Rehabilitation Act

64.     John Doe repeats each and every allegation contained in all preceding paragraphs and incorporates the same herein.

65.     Defendant DOJ is an agency as defined under the Rehabilitation Act, as amended, 29 U.S.C. § 794 *et seq*.

66.     John Doe's employment constitutes a program or activity of a federal agency, covered under 29 U.S.C. § 794 *et seq.*

67.     Defendant DOJ and its constituent United States Attorney's Offices are obligated not to exclude any person, solely by the reason of their disability, from participating in or receiving the benefit of any program or activity conducted by any Executive agency.

68.     Between June 2008 and January 2009, AUSAs and other employees of the USAO in the district to which John Doe was assigned intentionally and/or willfully failed to act on John Doe's reasonable accommodation request, and instead demoted him to a unit to work with persons who were the subject of his prior disclosures protected under the Whistleblower Act. When John Doe, an award-winning prosecutor, asked to be given a different assignment, AUSAs and other employees of the USAO failed to act, in violation of 29 U.S.C. § 794, and instead, illegally discriminated against John Doe by denying him employment on the basis of his disability.

69.     The Rehabilitation Act and the Department of Justice's own USAPs, promulgated under the Act, require DOJ to participate in an "Interactive Process" which should include 1) an analysis of the particular job to determine its purpose and essential functions; 2) consulting with the employee to determine his or her job-related limitations and how they may be overcome with an accommodation; 3) identifying possible accommodations and their effectiveness; 4) consideration of the employees preferences and selection of an accommodation that is appropriate for both employee and employer; and 5) the overall needs of the Office. None of those things occurred.

70.     Defendant DOJ instead used the information to fire John Doe.  John Doe's condition at the time was and is susceptible to accommodation in the workplace.  DOJ failed to afford him the protections of the Rehabilitation Act.

71.     As a direct and proximate cause of the violation of the Rehabilitation Act by Defendant DOJ, the Plaintiff has suffered damages, including but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, physical pain and suffering, and damage to career and professional reputation. Plaintiff's damages are ongoing and continuing.

72.     As a direct and proximate cause of the violation of the Rehabilitation Act by Defendant DOJ, the Plaintiff has incurred attorney's fees and costs in his defense.

### COUNT II – MSPB's Failure to Reverse Agency Action

73.     John Doe repeats each and every allegation contained in all preceding paragraphs and incorporates the same herein.

74.     Defendant MSPB is an independent, quasi-judicial agency in the Executive branch established by Congress under by the Civil Service Reform Act of 1978 (CSRA).

75.     John Doe was an employee of DOJ, an agency whose employee actions are reviewable by MSPB.

76.     John Doe was removed from employment by DOJ after the agency improperly used medical information to conclude, by improper procedural means, that Doe was no longer eligible for a security clearance that was required for his employment.

77.     John Doe appealed his wrongful removal from employment to the MSPB on February 11, 2009.  Doe appealed the decision of the first MSPB Administrative Judge, which concluded that his removal was not improper, to the MSPB Board.

78.     Title 5 C.F.R. §1201.56(b) requires MSPB is to overturn the action of the agency if the appellant shows 1) harmful error in the application of the agency's procedures in arriving at its decision; 2) the decision was based on any prohibited personnel practice described in 5 U.S.C. § 2302(b); or 3) that the decision was not in accordance with law.

79.     The MSPB Board concluded in its opinion of August 9, 2012, that the agency, DOJ, erroneously substituted its own review procedures to make a determination to remove Doe's eligibility for security clearance, and held that ARC review is the only appropriate procedural requirement prior to such a determination.

80.     EOUSA also committed error in its improper use of medical testimony for the purposes of determining John Doe's security clearance eligibility and subsequent removal.

81.     DOJ's decision to remove John Does' security clearance was based upon retaliation for his whistleblower behavior and requests for reasonable accommodations under the Rehabilitation Act, which is a prohibited personnel practice under 5 U.S.C. § 2302(b).

82.     Furthermore, the MSPB Board concluded that removal of John Doe without access to the ARC review required under a plain reading of Exec. Order No. 12,698 and 28 C.F.R. part 17 was not in accordance with law.

83.     Contrary to 5 C.F.R. §1201.56(b), which requires that MSPB reverse the agency action in the aforementioned circumstances, MSPB failed to reverse the agency action and instead remanded it to the agency for a "do over."

84.     Upon remand to DOJ, and despite an ARC finding favorable to John Doe, DOJ has refused to reinstate Doe to his former employment and has not complied with the terms of the MSPB remand order.

85.     As a direct and proximate cause of the error by Defendant MSPB, the Plaintiff has suffered damages from loss of agency employment which should have been reinstated by the MSPB upon application of the proper legal standards.  Plaintiff's damages are ongoing and continuing.  This Court should reverse the MSPB remand order and direct the MSPB to order John Doe's reinstatement with back pay, benefits, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief from this Court, as follows:

(a)     Award Plaintiff damages, subject to proof and in an amount to be determined at trial, for violating Plaintiff's rights under the Rehabilitation Act, including but not limited to actual, compensatory damages for, inter alia, harm to reputation and embarrassment and humiliation, physical injury, pecuniary loss, as well as for damage to Plaintiff's career;

(b)     Order preliminary and permanent injunctive relief and declaratory relief as appropriate;

(c)      Award Plaintiff his costs and reasonable attorney fees;

(d)      Reverse the decision of the MSPB and order John Doe reinstated to his original

position with back pay, benefits, and attorney's fees; and,

(e)      Grant such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff John Doe demands a trial by jury on all issues and facts triable by a jury under

the laws and Constitution of the United States.

October 10, 2013                          Respectfully Submitted,

                                          HANNON LAW GROUP


                                          _____/s/ J. Michael Hannon_____
                                          J. Michael Hannon, #352526
                                          1901 18th Street, NW
                                          Washington, DC 20009
                                          (202) 232-1907
                                          Fax:  (202) 232-3704
                                          jhannon@hannonlawgroup.com

                                          *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Complaint was sent *via* electronic mail through this court's filing system and via First Class mail, postage prepaid, this 10th day of October, 2012 to:

Ronald C. Machen, Jr.
Judiciary Center Building
555 Fourth Street, NW
Washington, DC, 20530

Eric Holder
United States Attorney General
950 Pennsylvania Avenue, NW
Washington, DC, 20530

Hillary A. Stern
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Deborah Miron
Merit Systems Protection Board
Director of Regional Operations and Chief Administrative Judge
1615 M Street, NW
Washington, D.C. 20419

William D. Spencer
Merit Systems Protections Board
Clerk of the Board
1615 M Street, NW
Washington, D.C. 20419

_____*/s/ J. Michael Hannon*_____
J. Michael Hannon