**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:13-cv-00992-KBJ |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT | : | |
| OF JUSTICE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISALLOW
<u>USE OF PSEUDONYM AND REQUEST FOR ORAL HEARING</u>**

Plaintiff John Doe, through counsel HANNON LAW GROUP, responds in opposition to the Government's Motion to Disallow Pseudonym filed with this Court on February 4, 2014.  In support of this opposition, John Doe presents the following memorandum of points and authorities.  Plaintiff also respectfully requests an oral hearing on the motion pursuant to Local Rule of Civil Procedure 7(f).

**STATEMENT OF FACTS**

Plaintiff John Doe is a veteran federal prosecutor, having received numerous awards and recognition for outstanding performance, including the highest award of the United States Attorney General.  At the time of the events alleged in this Amended Complaint, John Doe served as an Assistant United States Attorney for a federal district within the United States.  Am. Compl. ¶ 7.  In 2003, he became the target of departmental scrutiny after writing a memorandum that blew the whistle on a proposed illegal search and seizure by a rogue DEA agent in a matter known as the Money Exchange case.  The same supervisors asked him to suppress and destroy the whistleblowing memorandum.  *Id*. at ¶ 8-11.

His supervisors began to imply that Doe's behavior was the result of a psychological issue, although he met with a psychologist at the direction of the U.S. Attorney's Office (USAO) who found no need for treatment at that time. *Id*. at ¶ 12. However, the continued pressure by his supervisors eventually led Doe to experience an emotional crisis, and he took an authorized medical leave of absence to be treated by his psychologist for an anxiety disorder. *Id*. at ¶ 13. After his leave, Doe requested reasonable accommodations for his anxiety. *Id*. at ¶ 17.

USAO complied with the reasonable accommodations request until 2008, when the proposed illegal search and seizure of 2003 became an important event in a pending criminal case. *Id*. at ¶ 17. Defendants convicted by testimony of the rogue law enforcement agent who proposed the search and seizure began to allege numerous instances of serious misconduct by that agent: lying under oath, tampering with evidence, beating suspects, and setting up innocent persons. *Id*. at ¶ 18. The USAO of John Doe's district became concerned that this attention would expose the agency to criticism. *Id*. at ¶ 21. Nevertheless, Doe continued to investigate the Money Exchange case, identifying connections to fundraising behind the September 11, 2001 terrorist attacks. *Id*. at ¶ 19-30.

As a result of these connections, Doe shared his Money Exchange Memorandum with other law enforcement units and agencies within DOJ as he was required to do as part of the global war on terror. *Id*. at ¶ 22, 23, 24, 29. Doe's superiors in his district, fearing criticism for failing to pursue the financial links to the 9/11 attack, repeatedly criticized Doe's behavior in creating and sharing the memorandum, and perceived that he was "going outside the chain of command." *Id*. at ¶ 9, 11, 20, 24, 25, 32. His supervisors' disagreement with his conduct culminated in taking Doe off the Money Exchange case, demoting him to the Gun Unit, and announcing the demotion in an office-wide email. *Id*. at ¶ 25, 31-32. Doe again requested a

reasonable accommodation, based on his anxiety order, to not be moved to the Gun Unit.  *Id*. at ¶ 33-36.  Instead, DOJ used Doe's mental health status as an improper pretext to fire him for a purported lack of eligibility to hold a Special Sensitive security clearance.  *Id*. at ¶ 36, 47.

John Doe appealed his removal to the Merit Systems Protection Board (MSPB), moving to proceed under seal and pseudonym.  *Id*. at ¶ 48.  DOJ opposed the request, and the Administrative Law Judge denied the motion.  *Id*. at ¶ 48-49.  In early 2009, in the District Court of the District of Columbia, Doe also filed suit against DOJ for violations of the Privacy Act related to the release of Doe's mental health information.  The federal court judges in the case (first Chief Judge Royce Lamberth, then Judge Ellen Huvelle) permitted Doe to proceed under pseudonym and barred MSPB from releasing Doe's private medical information into the public domain.  Ex. 1, 2, 3.  In response to the Orders of the District Court, MSPB subsequently acknowledged Doe's need to protect his confidential health information in June 2009, and permitted him to proceed under pseudonym in its initial decision proceedings and in his appeal to the full MSPB board.  Am. Compl. at ¶ 56-58.

Although the initial decision of the Administrative Law Judge upheld Doe's removal, the full MSPB board concluded that DOJ had wrongly denied Doe a review of the removal decision by DOJ's Access Review Committee (ARC), and vacated the initial decision.  *Id*. at ¶ 56-58. The ARC, upon remand from the MSPB and after conducting its review, determined that there was no basis to conclude Doe was ineligible to maintain his security clearance by virtue of any mental health issue.  *Id*. at ¶ 59-60.  DOJ has not reinstated Doe despite the favorable ARC review.  *Id*. at ¶ 69.

**I.     JOHN DOE HAS ALREADY SATISFIED THE BURDEN OF SHOWING THE NEED TO PROCEED UNDER PSEUDONYM.**

The government misapprehends the authority upon which Plaintiff relies to proceed using a pseudonym.  John Doe initially obtained permission to proceed under pseudonym by Order of the United States District Court of the District of Columbia in a related cause of action, a claimed violation of the Privacy Act, that arose out of the same larger claim:  that the Department of Justice (DOJ) improperly used the pretext of mental health issues as a basis to have John Doe removed.  The initial order of the District Court permitted Doe to use a pseudonym, which could be reconsidered upon motion by a party, or *sua sponte*.   Despite motions by DOJ, Judge Huvelle permitted John Doe to continue and conclude the litigation pseudonymously.  MSPB, which had not yet granted John Doe permission to proceed under pseudonym, allowed the use of a pseudonym pursuant to an order from the District Court.  Finally, the Court of Appeals for the Federal Circuit permitted the case to be filed under pseudonym before eventually transferring the case to this District Court.  The sound discretion of those courts, applying the same standard as this Court is asked to apply, granted the protection of a pseudonym to the Plaintiff in all proceedings since his termination in 2009.  This Court, in its discretion, should consider the grant of this continuous protection in its decision on the government's motion.

Alternatively, Plaintiff argues that the government is barred from challenging his pseudonym status by virtue of the litigation that has already taken place on that issue before other judicial officers.

**II.    JOHN DOE'S CIRCUMSTANCES ARE CONSISTENT WITH CASES IN WHICH A COURT HAS PERMITTED USE OF A PSEUDONYM.**

Rule 10(a) of the Federal Rules of Civil Procedure states that in a complaint "the title of the action shall include the names of all the parties."  Although the Rules contain no explicit

provisions authorizing the use of pseudonyms, the Supreme Court has implicitly recognized the use of pseudonyms and other federal courts have allowed plaintiff s to proceed under fictitious names to avoid social stigma or potential harm. *See Roe vs. Wade*, 410 U.S. 113 (1973); *Doe vs. Bolton*, 410 U.S. 179 (1973).

Courts have generally permitted the use of pseudonyms to protect a plaintiff from harassment, injury, ridicule or personal embarrassment. *United States vs. Doe*, 655 F. 2d 920, 922 n.1 (9th Cir. 1981) (risk of serious bodily harm); *Poe vs. Ullman*, 367 U.S. 497, 498 n.1 (1961) (birth control); *Doe vs. Stegall*, 653 F. 2d 180, 186 (5th Cir. 1981) (threat of physical harm) ; *Doe vs.United Services Life Ins. Co*., 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (homosexuality); *Doe vs. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981) (conscientious objector status). Finally, cases involving mental health issues have been increasingly recognized as legitimate cause for use of a pseudonym. *Doe vs. Gallinot*, 486 F. Supp. 983 (C.D. Cal. 1979), *aff'd*, 657 F. 2d 1017 (9th Cir. 1981); *Doe v. Colautti*, 592 F.2d 704, 705 (3d Cir.1979); *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir.1997); *Doe v. Harris*, 495 F. Supp. 1161 (S.D.N.Y.1980); *Doe v. New York Univ*., 442 F. Supp. 522 (S.D.N.Y.1978); *Doe v. Hartford Life & Acc. Ins. Co*., 237 F.R.D. 545, 549 (D.N.J. 2006).

Here, the Plaintiff's need to proceed under pseudonym falls squarely within the types of cases that may potentially cause ridicule and personal embarrassment. By virtue of the hostile work environment to which he was subjected for years in the district of his employment, John Doe was provided an accommodation for his diagnosed anxiety and depression. In his prior tenure as an AUSA in a different district, John Doe had served with highest honors with no adverse effects on his health. In his new assignment, the United States Attorney and other AUSAs actively concealed the wrong-doing of the rogue law enforcement agent from the court

and the public.  John Doe would not tolerate the rogue agent's unlawful conduct, and actively criticized the rogue agent and his superiors.

   In response, his supervisors increased the pressure on John Doe, intentionally demoting him to an assignment they knew would aggravate his mental health condition.  His superiors and DOJ then used his mental health issues in an attempt to remove him from employment.  Doe and his family were devastated financially and psychologically by his improper removal.

   The government's contention that "Plaintiff fails to identify claims of a highly personal nature" is absurd.  Having already caused the Plaintiff and his family extensive private humiliation and financial distress, the government now seeks to expose John Doe to the further injury of public embarrassment and ridicule by bringing his private mental health issues into the public sphere.  Publicizing such inherently private personal information can cause even more damage to Doe's mental health, employment prospects, professional reputation, and community standing.   There is no reasonable basis to expose Doe to these risks in the absence of any legitimate countervailing interests.  Further, DOJ misconstrued the actual diagnosis of Doe's mental health professional, as the Access Review Committee has now found.  DOJ should never have used the mental health information to revoke the Security Clearance eligibility or to terminate John Doe; to now publicly expose DOJ's ill-advised misconception by publicly naming John Doe would only further compound the unwarranted injuries John Doe has already suffered at the hands of DOJ.

   Now that John Doe has prevailed in obtaining a determination that the basis for his removal was bogus, DOJ continues to refuse to reinstate him.  At an appropriate time, a motion for summary judgment on this issue will be filed.  In the meantime, one must suspect the motives of DOJ in now fighting anew the pseudonym issue.  Is DOJ determined to ruin John Doe's

reputation in the legal community so he is unemployable anywhere?  Is DOJ determined to send a message that should an employee fight a wrongful removal, that employee should be prepared to defend her reputation in the legal community?

### III.   JOHN DOE'S CASE IS DISTINGUISHABLE FROM OTHER CITED CASES WHERE USE OF A PSEUDONYM HAS BEEN DENIED.

The government's logic – that removal decisions based upon a decision of ineligibility for a security clearance are analogous to this case for the purposes of pseudonym use – is not sound.  The weight of authority cited by both the government and John Doe makes clear that the protection of a pseudonym does not inhere in a particular cause of action, but in the unique threat of harm to an individual plaintiff forced to proceed under his real name.

The cases cited by the government as analogous situations involve employees who had security clearances revoked for passing counterfeit currency, illegal drug use, alcoholism and drug use, and providing information to convicted criminals.  It is illogical to think that these cases of unlawful employee behavior equate to the lawful conduct of the Plaintiff here.  The findings of the MSPB and the Access Review Committee (ARC) determined that it was DOJ, not John Doe, who failed to follow the rules.  Even the principal case cited by the government, *Foote v. Moniz*, No. 13-5093 (D.C. Cir.), in which a plaintiff was denied employment after psychological exam resulted in denial of certification, is distinguishable.  Here, John Doe was not even given the proper psychological testing until after the MSPB ordered DOJ to provide ARC review—and that review rendered the government's removal based on a mental condition groundless.

The government's numerous examples of Rehabilitation Act plaintiffs who chose to proceed without use of pseudonym are equally unavailing.[1]  The government again erroneously predicates suitability of pseudonym use with a particular cause of action—not the unique circumstances of the individual plaintiff, and the potential harm that may ensue without the protection of anonymity.

It is clear that the Plaintiff does not "attempt to justify an anonymous filing based on the fact that he was removed from his position for failure to maintain eligibility for a security clearance," as argued by the government.  He justifies proceeding as John Doe because the government *improperly* used his mental health as basis for his removal, a claim vindicated by the findings of the ARC.

## IV.   THE GOVERNMENT CANNOT SHOW THAT IT WILL BE PREJUDICED BY PLAINTIFF'S USE OF A PSEUDONYM, OR THAT THE PUBLIC INTEREST WILL BE ADVERSELY IMPACTED IF A PSEUDONYM IS PERMITTED.

To determine whether a party may proceed anonymously, courts should consider the impact of the plaintiff's anonymity on the public interest in open proceedings and on fairness to the defendant.

> In balancing the competing interests involved, factors to consider include: (1) whether the  justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the  opposing party from allowing an action against it to  proceed anonymously.

---

[1]   "[T]he fact that some employees chose to file DOLI complaints under their true names does not refute plaintiffs' evidence that they hold a reasonable fear of retaliation.  Past acts of bravery in the face of danger is poor rationale for denying the courageous individual protection against future harm."  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

*Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008).  Courts have further recognized that "[w]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing*." Yacovelli v. Moeser*, 1:02CV596, 2004 WL 1144183 (M.D.N.C. May 20, 2004).

Here, John Doe wishes to preserve privacy with regard to his mental health and the false assertions regarding his health.  His desire to keep this information private is intended to prevent further harm not only to himself and his professional reputation, but to the innocent members of his family, who have suffered profound mental and physical distress since Doe was removed.  Because the government is a party, the Court should not hold the same reservations as if John Doe were suing an individual.  Finally, there is no evidence to suggest that the government will be unfairly prejudiced by allowing John Doe to proceed anonymously.  The government knows the Plaintiff's identity, and is able to effectively litigate the matter without undermining his valid privacy concerns.  Because the question in John Doe's claim is one that relies on a legal question regarding procedure, the "credibility and factual knowledge of [the plaintiffs is] not at issue in this matter." *Yacovelli*, WL 1144183 at *8.  Therefore, the balancing analysis should tip in favor of the Plaintiff here.

Likewise, the public interest will not be harmed in this case by permitting John Doe to proceed under pseudonym.  Doe acknowledges that a plaintiff's use of fictitious names is typically inconsistent with a preference for public access to public proceedings.  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  Doe further acknowledges that the public has an interest in seeing this case decided on the merits.  Employee suits to enforce their statutory rights benefit the general public.  *Id*. at 1073.  Here, as in *Does I*

*thru XXIII v. Advanced Textile Corp.*, the best way to simultaneously vindicate the public's interest in the case and protect the privacy of plaintiffs is to permit the case to proceed under pseudonym.

## V.      THE MOTION SHOULD BE DENIED WITHOUT PREJUDICE UNTIL THE LEGALITY OF DOE'S REMOVAL IS DECIDED.

If the government's use of Doe's mental health information to remove him is contrary to law, then there is no reason why John Doe's identify and health information should be made public.  There is also no reason to revoke the protections of anonymity prematurely.  The decision to revoke John Doe's pseudonym may still be reevaluated later in the proceeding, but may irreparably harm him and his family if improperly revoked before a showing that the governmental has acted lawfully in removing him.  Denying, without prejudice, the government's motion to disallow pseudonym until it has shown merit in Doe's removal would provide a prudent balance between the recognized privacy interests of John Doe and this country's judicial preference for public proceedings.

WHEREFORE, Defendants' Motion to Disallow Pseudonym should be denied.

## REQUEST FOR HEARING

Plaintiff respectfully requests an oral hearing on the motion so that additional information may be presented to the Court *ex parte,* and to respond to any questions the Court may have on the matter.

March 4, 2014                                   Respectfully Submitted,

                                                HANNON LAW GROUP


                                                _____*/s /J. Michael Hannon*_____
                                                J. Michael Hannon, #352526
                                                1901 18th Street, NW
                                                Washington, DC 20009
                                                (202) 232-1907
                                                Fax:  (202) 232-3704
                                                jhannon@hannonlawgroup.com

                                                *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent *via* electronic mail through this court's filing system this 4th day of March, 2014 to all ECF attorneys of record:

Kathryn L. Wyer
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7124
Washington, DC 20001
Mail: P.O. Box 883, Washington, DC 20044
Tel. 202 616-8475
Fax 202-616-8470
kathryn.wyer@usdoj.gov


                                                _____*/s /J. Michael Hannon*_____
                                                J. Michael Hannon